**F I L E D**

**UNITED STATES COURT OF APPEALS**

**June 19, 2006**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANSELMO REYES-SOTO,

    Defendant-Appellant.

No. 05-1224

(D.C. No. 04-CR-396-N)

(D. Colorado)

**ORDER AND JUDGMENT** [*]

Before **HENRY, BRISCOE,** and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore, ordered submitted without oral argument.

Anselmo Reyes-Soto was convicted of possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2, and sentenced to 235 months' imprisonment. On

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

appeal, Reyes-Soto challenges the reasonableness of his sentence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm Reyes-Soto's sentence.

I.

In April 2004, Drug Enforcement Administration (DEA) agents began an investigation of Pedro Ortiz-Barrios. Through a confidential informant, the DEA learned of Ortiz-Barrios' involvement with cocaine and "ice" methamphetamine distribution activities in the Los Angeles, California area. Eventually, Ortiz-Barrios agreed to sell ten pounds of methamphetamine to the confidential informant in Colorado. The confidential informant subsequently had two telephone conversations with Reyes-Soto concerning the price of the methamphetamine. On September 7, 2004, in Denver, Colorado, DEA agents arrested Ortiz-Barrios, Reyes-Soto, and a third individual identified as Filemon Bustos-Medina, after the three men removed a large amount of methamphetamine from their Ford Explorer and attempted to sell the drugs to the confidential informant.

On November 17, 2004, a grand jury issued a superseding indictment charging Reyes-Soto with one count of conspiracy to possess with the intent to distribute a substance containing 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count 1), and one count of possession with intent to distribute a substance containing 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18

U.S.C. § 2 (Count 2). Following each enumerated count, the superseding indictment also contained a section entitled "Alleged Offense Characteristics." The additional allegations for each count were identical, and stated in relevant part:

> As to the offense alleged in *Count One* of the Indictment, the government further alleges the following:
>
> 1. Specification One: Drug Quantity
>
> The defendants engaged in a conspiracy involving at least 1.5 kilograms or more of a mixture or substance containing a detectable amount of methamphetamine.

Vol. I, Doc. 41 (emphasis added).

On December 13, 2004, Reyes-Soto's case proceeded to jury trial on both counts. After the government presented its case in chief, the district court granted Reyes-Soto's motion for judgment of acquittal as to Count 1, but denied the motion as to Count 2. Vol. I, Doc. 62. During the instruction conference, the district court struck the "Alleged Offense Characteristics" section under Count 2, concluding that the government had erroneously repeated the conspiracy allegations from Count 1 verbatim, and thus failed to tailor the allegations to Count 2. The court then informed the parties that it would not use a special verdict form on drug quantity, and would simply ask the jury to decide whether Reyes-Soto was guilty or not guilty of possession with intent to distribute 500 grams or more of methamphetamine. On December 16, the jury returned a verdict

of guilty on Count 2.

The presentence report (PSR) recommended an offense level of 38 under the guidelines' Drug Quantity Table.  See U.S.S.G. § 2D1.1(c)(1) (providing for a base offense level of 38 for 1.5 kilograms or more of methamphetamine "ice").  Specifically, the PSR relied on a laboratory report from Reyes-Soto's trial that found that the substance seized when Reyes-Soto was arrested contained a net quantity of 4,356 grams of methamphetamine "ice."  The PSR also recommended a criminal history category I because Reyes-Soto did not have a prior criminal history.  Based on an offense level of 38, and a criminal history category I, Reyes-Soto's guideline range was 235 to 293 months.

Reyes-Soto objected to the PSR, contending that under Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 543 U.S. 220 (2005), there must be a jury finding regarding the quantity of methamphetamine "ice" he possessed, and therefore, the total offense level should be 32 based on a conviction for possession of 500 grams of methamphetamine.  See U.S.S.G. § 2D1.1(c)(4) (providing for a base offense level 32 for quantities of methamphetamine at least 500 grams but less than 1.5 kilograms).  Additionally, Reyes-Soto argued that his role in the offense was minor and that he qualified for a safety valve reduction under U.S.S.G. § 5C1.2.  Further, he argued that he was similarly situated to co-defendant Bustos-Medina, who was offered a plea bargain which would result in the government's recommendation of a sixty-month

sentence.

At the sentencing hearing held on April 21, 2005, the district court rejected Reyes-Soto's argument under Blakely and Booker, concluding that under the remedial majority opinion in Booker, a judge may find facts by a preponderance of the evidence at sentencing provided that the guidelines are applied in an advisory manner. Supp. Vol. I at 15-17. The court then set Reyes-Soto's base offense level at 38. The court reasoned that Reyes-Soto had not seriously disputed the laboratory report and evidence at trial that verified the net weight of the methamphetamine to be 4,445 grams, with a purity level of 98%, for a total of 4,356 grams of methamphetamine "ice." Id. The district court emphasized that it did not hesitate to reach this conclusion because the base offense level of 38 applied to any amount above 1.5 kilograms of methamphetamine ice, and the quantity at issue exceeded 1.5 kilograms by almost three times. Id. The district court also denied Reyes-Soto's arguments for a minor role adjustment and a safety valve adjustment. Id. Finally, the district court rejected Reyes-Soto's assertion that he was similarly situated to Bustos-Medina. The district court explained that the evidence showed that Reyes-Soto had a larger role in arranging the drug transaction, and the court further noted that it was not certain what sentence Bustos-Medina would receive because the court had not yet accepted Bustos-Medina's plea agreement.

The district court concluded that Reyes-Soto's guideline sentencing range

was 235 to 293 months based on an offense level of 38 and a criminal history category I.  Id.  After reciting the sentencing factors set forth in 18 U.S.C. § 3553(a), and stating that it had considered those factors, the court sentenced Reyes-Soto to 235 months' imprisonment.  The district court added that nothing in Reyes-Soto's background was so extraordinary or unusual to justify a sentence below the advisory guideline range, and that Reyes-Soto's sentence avoided unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  Id. at 19-21.

## II.

Reyes-Soto challenges the reasonableness of his sentence.  For sentences imposed after Booker our review is for "reasonableness," and we look to the factors enumerated in 18 U.S.C. § 3553(a) for guidance in determining whether the sentence imposed is reasonable.  United States v. Morales-Chaires, 430 F.3d 1124, 1128 (10th Cir. 2005) (citing Booker, 543 U.S. at 261).  In this circuit, we utilize a two-step approach when reviewing a sentence for reasonableness.  First, we review, if challenged, whether the district court correctly calculated the defendant's guideline sentence, reviewing the district court's legal conclusions de novo and factual findings for clear error.  United States v. Kristl, 437 F.3d 1050, 1054-55 (10th Cir. 2006).  Second, if the district court correctly determined the guideline sentence, we then review the sentence for reasonableness, applying a rebuttable presumption of reasonableness for sentences imposed within the

-6-

advisory guideline range.  Id.

First, Reyes-Soto contends that his base offense level would have been 32 if the district court had sentenced him pre-Booker.  Reyes-Soto suggests that under Blakely the district court would not have made drug quantity findings by a preponderance of the evidence standard.  Instead, he submits that the district court would have relied on the jury's verdict that he possessed 500 grams or more of methamphetamine and applied a base offense level 32 for quantities of methamphetamine of at least 500 grams but less than 1.5 kilograms.  See U.S.S.G. § 2D1.1(c)(4).

Rather than engage in speculation, we review only the district court's actual calculation of Reyes-Soto's base offense level.[1]  The district court's drug quantity finding based upon a preponderance of the evidence standard was permissible because it applied the guidelines in an advisory manner.  See United States v. Cooper, 437 F.3d 324, 330 (3d Cir. 2006) ("As before Booker, the standard of proof under the guidelines for sentencing facts continues to be preponderance of the evidence."); United States v. Dalton, 409 F.3d 1247, 1252 (10th Cir. 2005) ("Booker . . . does not render judicial fact-finding by a preponderance of the evidence per se unconstitutional.  The remedial portion of

---

[1]     We note, however, that the jury did not find that Reyes-Soto possessed at least 500 grams, but less than 1.5 kilograms.  The jury decided that Reyes-Soto possess 500 *or more* grams of methamphetamine.

Booker demonstrates that such fact-finding is unconstitutional only when it operates to increase a defendant's sentence *mandatorily*.") (emphasis in original); United States v. Magallanez, 408 F.3d 672, 685 (10th Cir. 2005) ("[W]hen a district court makes a determination of sentencing facts by a preponderance test under the now-advisory Guidelines, it is not bound by jury determinations reached through application of the more onerous reasonable doubt standard."). As a result, we review the district court's factual findings regarding drug quantity for clear error. Dalton, 409 F.3d at 1251 (citation omitted). At sentencing, Reyes-Soto did not present any evidence disputing the drug quantity and quality provided by the laboratory report. On appeal, Reyes-Soto fails to argue that the district court committed clear error in finding that he possessed 4,356 grams of "ice" methamphetamine. We therefore conclude that the district court's drug quantity findings were not clearly erroneous.

Next, Reyes-Soto asserts that his sentence is unreasonable because "the Drug Quantity Table in Sentencing Guideline 2D1.1(c) is an arbitrary and purely mechanical assignment of guideline base offense levels of varying weights of drugs involved in the offense of conviction." Aplt. Br. at 15. Reyes-Soto's argument is without merit. Our reasonableness review "necessarily encompasses . . . the method by which the sentence was calculated," Kristl, 437 F.3d at 1055, and it is clear here that the district court properly relied on the Drug Quantity Table to calculate Reyes-Soto's guideline offense level. "Although under Booker,

the Sentencing Guidelines are an advisory rather than a mandatory regime, the district court is obliged to 'consult' . . . the Guidelines in sentencing" and this "requirement, at a minimum, obliges the district court to calculate correctly the sentencing range prescribed by the Guidelines[.]" United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005); see Kristl, 437 F.3d at 1054-55 (stating that we must generally remand, without evaluating the reasonableness of a sentence, if the district court erred in applying the Guidelines). Moreover, on several occasions we have rejected challenges to the constitutionality of U.S.S.G. § 2D1.1, as well as arguments that its formulas for determining the weight of controlled substances are arbitrary and capricious. See, e.g., United States v. Ashley, 26 F.3d 1008, 1013 (10th Cir. 1994); United States v. Dahlman, 13 F.3d 1391, 1399-1400 (10th Cir. 1993); United States v. Jackson, 11 F.3d 953, 955-56 (10th Cir. 1993); United States v. Cody, 7 F.3d 1523, 1527-28 (10th Cir. 1993); United States v. Thurmond, 7 F.3d 947, 950-53 (10th Cir. 1993). We therefore conclude that the district court properly calculated Reyes-Soto's base offense level to be 38 under U.S.S.G. § 2D1.1(c)(1), and Reyes-Soto's advisory guideline range to be 235 to 293 months.

Finally, Reyes-Soto contends that at sentencing the district court adopted a "near-mandatory application" of the sentencing guidelines. Aplt. Br. at 15. We recently rejected this argument in United States v. Davis, 437 F.3d 989 (10th Cir. 2006). The defendant in Davis argued that the district court treated the guidelines

as "de facto mandatory." Id. at 997. We disagreed, observing that the record clearly indicated that the district court thoroughly considered the sentencing factors set forth in § 3553(a) before it sentenced the defendant at the bottom of the advisory guideline range. Id. Here, the district court followed the dictates of Booker by first consulting the guidelines, and then considering the more general § 3553(a) sentencing factors before imposing a sentence at the bottom of the advisory guideline range. The district court emphasized the need to impose a sentence equivalent to the sentences of defendants with similar records who were found guilty of similar conduct, as well as the absence of any evidence in Reyes-Soto's record that justified a sentence below the recommended guideline range. Reyes-Soto has failed to rebut the presumption of reasonableness that we attach to sentences that are within the recommended guideline range. Kristl, 437 F.3d at 1054. Accordingly, we conclude that Reyes-Soto's sentence was reasonable. AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge